**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MOHAMAD TLAIB, NESHAUNDA GEE, and ANGELA FRIIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRADER JOE'S COMPANY,<br><br>Defendant. | Case No. 1:26-cv-13965<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Mohamad Tlaib, Neshaunda Gee, and Angela Friis (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, alleges the following Class Action Complaint against Trader Joe's Company ("Trader Joe's") ("Defendant"), and allege, upon information and belief, including the investigation of counsel, as follows:

## INTRODUCTION

1. Plaintiffs bring this class action on behalf of consumers who purchased Defendant Sweet & Sour Gummy Worms Candies and/or Dark Chocolate Chips No Sugar Added (the "Products"), during the applicable class period. Defendant formulates, labels, markets, advertises, distributes, and sells the Products throughout the United States through retail stores.

2. Defendant prominently markets the Products to consumers as "no sugar added" and "0g of sugar per serving" for the chocolate chips and worms respectively, and communicate to consumers that the Products contain no sugar (collectively, the "Zero Sugar Representations"). The Zero Sugar Representations appear on the front label of the Products, so consumers perceive and appreciate them at the point of purchase.

3. The Zero Sugar Representations are false and misleading. In reality, the Products are sweetened with allulose and put simply, allulose is sugar. Allulose is a monosaccharide, and thus, is a sugar under the federal labeling definitions and under the ordinary meaning of the word. Allulose is also listed as the second principal ingredient of the Products, which means it is among the most prevalent ingredients by weight.

4. The quantity of allulose in the Products is not trivial. It is a substantial quantity of sugar that is present in every serving that Plaintiffs and class members consumed.

5. Consumers who buy products marketed as "0g of Sugar Per Serving" or "No Sugar Added" are often health conscious. They may be managing blood glucose, limiting caloric intake, or following a diet intended to avoid sugar for medical, dietary, or personal reasons. Defendant's Zero Sugar Representations were designed to attract exactly these consumers and to command a price premium over products containing sugar.

6. Plaintiffs and class members paid a price premium for the Products because of the Zero Sugar Representations. Yet they did not receive what they paid for because the Products did, in fact, contain sugar.

7. As set forth below, Defendant's mislabeling of the Products violates applicable consumer-protection statutes and common law doctrines, including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 § 505/1 et seq., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., California's Unfair Competition Law ("UCL"), Cal. Bus. & prof. Code § 17200 et. seq., and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et. seq.

## THE PARTIES

8. Plaintiffs Mohamed Tlaib, Neshaunda Gee, and Angela Friis are citizens of the state of Illinois and reside in this District.

9. Plaintiff Tlaib actively makes a point to purchase "no sugar" items in his daily life for dietary reasons. He has purchased the Trader Joe's Dark Chocolate Chips several times in the past. He has also purchased the Trader Joe's Sweet & Sour Gummy Worms Candies.

10. Plaintiff Gee actively makes a point to purchase "no sugar" items in her daily life for dietary reasons. She has purchased the purchased the Trader Joe's Sweet & Sour Gummy Worms Candies several times, with her last purchase being in September 2026.

11. Plaintiff Friis actively makes a point to purchase "no sugar" items in her daily life for dietary reasons. She has purchased the Trader Joe's Dark Chocolate Chips several times in the past for special occasions. She has also purchased the Trader Joe's Sweet & Sour Gummy Worms Candies more recently. She has purchased them a handful of times, the last being just a few weeks ago.

12. Defendant Trader Joe's Company is a California corporation with its principal place of business in Monrovia, California. Trader Joe's has 661 stores in 43 states throughout the nation.

13. At all times during the class period, Trader Joe's was the designer, manufacturer, labeler, marketer, advertiser, distributor, and vendor of the Products throughout the United States, including Illinois, directly and through third-party vendors and distributors.

14. Defendant has substantial contacts with and receives substantial benefits and revenue from and through the State of Illinois.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because the proposed Classes each include more than 100 members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one Class Member of the proposed classes is a citizen of a state different from Defendant.

16. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over Defendant because Defendant routinely conducts business in the State where this district is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products, and by accepting and processing payments for those products within this State.

18. Defendant has had substantial contact with and receive substantial benefits and revenue from and through sales of the Products in the State of Illinois.

19. Plaintiffs purchased the Products in this District and suffered the injuries alleged herein in this District.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiffs' claims occurred within this District, and Defendant does business in this Judicial District.

## FACTUAL ALLEGATIONS

**Defendant's Products and the Zero Sugar Representations**

21. Defendant formulates, labels, markets, advertises, distributes, and sells the Products to consumers throughout the United States. The Products are sold through Trader Joe's retail stores.

22. Defendant prominently represents and markets the Products to consumers as "no sugar added" and "0g of sugar per serving" for the chocolate chips and worms respectively. As depicted below, Defendant's Products bear the Sugar-Free Representations on the front label, in large, capitalized letters:[1]




[1] Screenshots of the Products' packaging as displayed Defendant's website. *See Sweet & Sour Gummy Worms Candies*, Trader Joe's, https://www.traderjoes.com/home/products/pdp/sweet-sour-gummy-worms-candies-081525 (last visited Nov. 4, 2026). *See also Dark Chocolate Chips No Sugar Added,* Trader Joe's, https://www.traderjoes.com/home/products/pdp/dark-chocolate-chips-no-sugar-added-079169tps://www.traderjoes.com/home/products/pdp/sweet-sour-gummy-worms-candies-081525 (last visited Nov. 4, 2026).




23. The Zero Sugar Representations continue to appear in the Products' description and marketing materials. Defendant's website advertises the Dark Chocolate Chips as "an excellent option for bakers of all experience levels—especially those looking to limit their sugar intake."[2]



Dairy Free Gluten Free

Autumn means many things to us, here at Trader Joe's. It's pumpkin season. It's soup season. It's maple season. And of course, as temperatures start to swing toward the "sweater weather" side of the spectrum, it's also the onset of baking season. Here now to herald this auspicious autumnal occasion, Trader Joe's No Sugar Added Dark Chocolate Chips are an excellent option for bakers of all experience levels—especially those looking to limit their sugar intake.

[2] *Dark Chocolate Chips No Sugar Added,* Trader Joe's, https://www.traderjoes.com/home/products/pdp/dark-chocolate-chips-no-sugar-added-079169 (last visited Nov. 4, 2026).

24. Defendant's website advertises the Sweet & Sour Gummy Worms Candies as zero sugar, stating "*these* Candies contain zero grams of sugar per serving! Instead, these fruity flavored Worms rely on a blend of allulose, organic erythritol, and monk fruit extract for their sweetness (and citric acid for their sour "zing"), creating a zero-grams-of-sugar-per-serving candy that still *seriously* satisfies a sweet tooth." [3]

> Worms, in their gummy form, have always made a strong case for themselves—wonderfully wiggly, charmingly chewy, and satisfyingly sweet. Trader Joe's Sweet & Sour Gummy Worms inch that tradition forward, but with a slightly different approach to sweetness: *these* Candies contain zero grams of sugar per serving! Instead, these fruity flavored Worms rely on a blend of allulose, organic erythritol, and monk fruit extract for their sweetness (and citric acid for their sour "zing"), creating a zero-grams-of-sugar-per-serving candy that still *seriously* satisfies a sweet tooth.
>
> If the aforementioned absence of sugar wasn't enough to hook you, you'll be glad to hear these Worms get their colors from fruit and veggie juices, and their fruity flavor from strawberry juice concentrate and natural flavors. Dig into a package of Worms during a movie. Use them to bait your candy dish, or to add a squirmy splash of color to cupcakes. Arrange them atop cups of TJ's Chocolate Pudding along with crushed Joe-Joe's Cookies for a nostalgic "Worms in Dirt"-style dessert. However you enjoy them—by the fistful, one segment at a time, or otherwise—Trader Joe's Sweet & Sour Gummy Worms are ready to wriggle their way into your regular rotation of Sweet (and Sour) snacks.

[3] *Sweet & Sour Gummy Worms Candies*, Trader Joe's, https://www.traderjoes.com/home/products/pdp/sweet-sour-gummy-worms-candies-081525 (last visited Nov. 4, 2026).

25. Defendant’s own ingredient list states that the Products contain allulose. In fact, allulose is the second ingredient listed on the ingredients list for the Sweet & Sour Gummy Worms.[4]

**Ingredients**

RESISTANT TAPIOCA DEXTRIN FIBER, ALLULOSE, RESISTANT CORN MALTODEXTRIN FIBER, ORGANIC ERYTHRITOL, PECTIN, LACTIC ACID POWDER (LACTIC ACID, CALCIUM LACTATE), CITRIC ACID (ACIDULANT), SODIUM CITRATE, STRAWBERRY JUICE CONCENTRATE, NATURAL FLAVORS, FRUIT AND VEGETABLE JUICE (COLOR), MONK FRUIT EXTRACT.

**MAY CONTAIN MILK, EGG, SOY, WHEAT, PEANUT, ALMOND, CASHEW, HAZELNUT, MACADAMIA NUT, PECAN, PISTACHIO, WALNUT.**

26. Allulose is also the second ingredient listed on the ingredients list for the Dark Chocolate Chips.[5]

**Ingredients**

- UNSWEETENED CHOCOLATE
- ALLULOSE
- COCOA BUTTER

[4] *Id. supra* note 5.
[5] *Dark Chocolate Chips No Sugar Added, supra* note 3.

27. The Nutrition Facts panels on the Dark Chocolate Chips state that they contain zero (0) grams of Total Sugars and zero (0) grams of Added Sugars.[6] These declarations are accompanied by and reinforce the front-label "NO SUGAR ADDED" representation. Nowhere do the Nutrition Facts panels or any other labeling disclose the amount of allulose present or indicate that allulose is a sugar.

| | AMOUNT | %DV |
|---|---|---|
| **Total Fat** | 11 g | 14% |
| **Saturated Fat** | 7 g | 35% |
| **Trans Fat** | 0 g | |
| **Cholesterol** | 0 mg | 0% |
| **Sodium** | 0 mg | 0% |
| **Total Carbohydrate** | 16 g | 6% |
| **Dietary Fiber** | 2 g | 7% |
| **Total Sugars** | 0 g | |
| **Includes** | 0 g Added Sugars | 0% |
| **Protein** | 2 g | |
| **Vitamin D** | 0.0 mcg | 0% |
| **Calcium** | 20 mg | 2% |
| **Iron** | 0.3 mg | 2% |
| **Potassium** | 110 mg | 2% |

28. The Nutrition Facts panels on the Sweet & Sour Gummy Worms state that they contain zero (0) grams of Total Sugars and zero (0) grams of Added Sugars. These declarations are accompanied by and reinforce the front-label "0g Sugar Per Serving" representation. Nowhere

[6] *Id.*

do the Nutrition Facts panels or any other labeling disclose the amount of allulose present or indicate that allulose is a sugar.[7]

| | AMOUNT | %DV |
|---|---|---|
| **Total Fat** | 0 g | 0% |
| **Saturated Fat** | 0 g | 0% |
| **Trans Fat** | 0 g | |
| **Cholesterol** | 0 mg | 0% |
| **Sodium** | 45 mg | 2% |
| **Total Carbohydrate** | 26 g | 9% |
| **Dietary Fiber** | 14 g | 50% |
| **Total Sugars** | 0 g | |
| **Includes** | 0 g Added Sugars | 0% |
| **Sugar Alcohols** | 2 g | |
| **Protein** | 0 g | |
| **Vitamin D** | 0.0 mcg | 0% |
| **Calcium** | 40 mg | 4% |
| **Iron** | 0.0 mg | 0% |
| **Potassium** | 0 mg | 0% |

29. A reasonable, ordinary consumer encountering an unqualified representation that a food product has "0g Sugar per Serving" or "No Sugar Added" on the front label of the product would reasonably understand that representation according to its ordinary meaning: that the Products contain no sugar.

30. The Zero Sugar Representations are material. Sugar content is among the most important characteristics of food products, especially to consumers who are trying to watch their sugar. Defendant made the Zero Sugar Representations because they knew that consumers pay attention to sugar content and would be more likely to buy, and pay more for, a product labeled as containing zero sugar.

[7] *Sweet & Sour Gummy Worms Candies, supra* note 3.

31. Defendant has maintained these misrepresentations continuously and consistently across all marketing channels and throughout the class period.

**Allulose is Unambiguously Classified as a Sugar Under the Applicable Regulations.**

32. Allulose is a naturally occurring sugar found in small amounts in figs, raisins, wheat, maple syrup, and molasses. Chemically, allulose is a monosaccharide, similar to fructose.

33. Under the federal labeling regulations, "Total Sugars" are defined as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii). Because allulose is a monosaccharide, it falls within the regulation's definition of "Total Sugars."

34. Nothing in the regulatory text of § 101.9(c)(6)(ii) excludes allulose from the definition of "Total Sugars."

35. The FDA's regulatory history confirms this reading. In its 2016 final rule revising the Nutrition Facts label, the FDA specifically considered the treatment of allulose and stated that "[a]llulose, as a monosaccharide, must be included" in the Total Sugars declaration unless and until the agency adopted a different rule.[8]

36. Subsequently, the FDA issued guidance concerning allulose in October 2020. The guidance announced an exercise of enforcement discretion concerning the declaration of allulose on Nutrition Facts labels, pending further consideration through rulemaking.[9] It only addressed the FDA's enforcement position concerning how allulose should be treated for purposes of specified nutrition-panel declarations. It did not amend § 101.9(c)(6)(ii), did not promulgate a new

---

[8] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

[9] FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 1 (Oct. 2020).

definition of "Total Sugars," and did not formally exclude allulose from the regulatory definition of sugar.

**Defendant's Products Contain Allulose, a Sugar.**

37. Contrary to Defendant's Sugar-Free Representations, the Products contain a substantial amount of sugar per serving in the form of allulose.

38. Defendant's own labeling confirms that the Products contain allulose. For example, allulose is the Products' second ingredient listed on the respective ingredients list for the both the Sweet & Sour Gummy Worms and Dark Chocolate Chips. The ingredient list for the Dark Chocolate Chips includes: unsweetened chocolate, allulose, and cocoa butter.[10] The ingredient list for the Sweet & Sour Gummy Worms include: "Resistant Tapioca Dextrin Fiber, Allulose, Resistant Corn Maltodextrin Fiber, Organic Erythritol, Pectin, Lactic Acid Powder (Lactic Acid, Calcium Lactate), Citric Acid (Acidulant), Sodium Citrate, Strawberry Juice Concentrate, Natural Flavors, Fruit and Vegetable Juice (Color), Monk Fruit Extract."[11]

39. Under federal labeling laws, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). The fact that allulose is identified as the second ingredient in each product further demonstrates that allulose is a substantial component of the Products, rather than a de minimis or incidental ingredient.

40. Thus, Defendant's own Nutrition Labels and Ingredient Lists establish the presence of a high quantity of allulose in the Products, which contradicts Defendant's packaging assertions of "0g Sugar Per Serving" and "No Sugar Added" on the Products.

---

[10] *Dark Chocolate Chips No Sugar Added, supra* note 3.
[11] *Sweet & Sour Gummy Worms Candies, supra* note 3.

**Defendant's Zero Sugar Representation on the Product Packaging is Misleading.**

41. Congress delegated authority to the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act. The FDA promulgated detailed food-labeling regulations in 21 C.F.R. part 101.

42. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c).

43. By contrast, the Zero Sugar Representations appear outside the Nutrition Facts panel on the Products' front labels and expressly characterize the level of sugar in the Products. 21 C.F.R. § 101.13(b).

44. Nutrient-content claims are strictly prohibited unless specifically authorized by FDA regulations. 21 C.F.R. § 101.13(b) states, "[a] claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D."

45. Under 21 C.F.R. § 101.60(c)(1), a food may not be labeled as "sugar free" or "zero sugar" unless:

(i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; *and*

(ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar".

46. Upon information and belief, the Products do not comply with these requirements. The Products are "misbranded" under federal law because the labels bear impermissible and deceptive nutrient-content claims. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), 101.13(c), 101.60(c)(1). Misbranded food products may not lawfully be introduced into or delivered for introduction into interstate commerce. 21 U.S.C. § 331(a).

47. The Illinois Food, Drug, and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq., incorporates applicable federal regulations into Illinois law. 410 ILCS 620/21(j) ("A federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation."). Therefore, Defendant's Zero Sugar Representations also violate Illinois regulations.

48. Additionally, the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq., incorporates applicable federal food-labeling regulations into California law. Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). Therefore, Defendant's Sugar-Free Representations also violate California regulations.

49. Plaintiffs do not seek to enforce the FDCA, the IFDCA, or the Sherman Food, Drug, and Cosmetic Law. Instead, they seek relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq, California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., California's Unfair Competition Law ("UCL"), Cal. Bus. & prof. Code § 17200 et. seq., California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et. seq., or under the theory of unjust enrichment.

50. Defendant prominently, openly, and repeatedly represents to consumers that the Products do not contain sugar. Thus, the Zero Sugar Representations are objectively false and misleading.

51. A consumer examining the front of the Products' package would see the prominent "0g Sugar per Serving" and "No Sugar Added" claims positioned directly below the product name. The placement and prominence of the Zero Sugar Representations establish that the claims are a key selling feature.

52. Reasonable consumers are not required to scrutinize the back label of a product, examine ingredient lists, or conduct independent scientific research to verify express claims made on the front of the packaging. When a manufacturer makes an affirmative representation on the front label, consumers may reasonably rely on that representation without conducting additional investigation.

53. An ordinary consumer who examines the Nutrition Facts panel encounters declarations stating "0g Total Sugars" and "0g Added Sugars." These declarations reinforce the misleading impression created by the front-labels which state "0g Sugar per Serving" and "No Sugar Added" claims; they do not dispel it.

54. Even if a reasonable consumer notices "allulose" listed in the ingredients, the consumer has no reason—based on the conspicuous "0g Sugar per Serving" and "No Sugar Added" claims and the "0g Total Sugars" declarations—to understand that allulose is a sugar. Consumers possess varying levels of knowledge about food chemistry and ingredient formulations. The average consumer cannot be expected to possess specialized knowledge of whether specific ingredients are classified as sugars under FDA regulations.

55. Defendant bears responsibility for ensuring that their express label representations are truthful and not misleading. Ordinary consumers are entitled to rely on such representations without conducting independent investigation or possessing technical expertise.

**Defendant Knew the Products Contain Substantial Amounts of Allulose.**

56. Defendant knew that the Products contained substantial amounts of allulose before placing the Products on the market. Upon information and belief, Defendant was also aware that allulose is a sugar.

57. Defendant necessarily possessed this information because Defendant controls the Products' formulation, ingredient specifications, manufacturing, packaging, labeling, and marketing.

58. Defendant also knew that consumers would encounter and consider the Zero Sugar Representations when deciding whether to purchase the Products. The product packaging and advertisements highlight the zero-sugar nature of the Products.

59. Upon information and belief, Defendant selected and used the Zero Sugar Representations as part of a deliberate marketing strategy designed to distinguish the Products from competing products, including less costly versions of other chocolate chips and gummy

worms containing conventional sugar, and to appeal to consumers willing to pay a premium for products without sugar.

60. Defendant repeated use of the Zero Sugar Representations on the Products' packaging and in its advertising was not the result of an isolated printing error, inadvertent omission, or one-time mistake. Rather, Defendant incorporated the representations into the Products' branding and marketing and sold the Products to customers while using those representations.

61. Defendant's use of the representations despite its knowledge of the Products' formulation further demonstrates that the representations were an intentional and material component of Defendant's marketing and sale of the Products.

62. Upon information and belief, Defendant continues to market and sell the Products using the Zero Sugar Representations.

63. Defendant had the ability to accurately describe the Products or to simply make no nutrient-content claim concerning sugar at all. Instead, Defendant affirmatively chose to market and sell the Products using the Zero Sugar Representations, thereby inducing consumers seeking products without sugar to purchase the Products.

**Plaintiffs and Consumers Were Injured by Defendant's Misrepresentations.**

64. Plaintiffs purchased the Products are for personal, family, or household use and not for resale.

65. Before making purchases, Plaintiffs each reviewed the front labels of the Products and saw the Zero Sugar Representations, which Plaintiffs understood to mean that the Products contained no sugar.

66. The Zero Sugar Representations are material. Whether a food product contains sugar is a characteristic that a reasonable consumer, acting reasonably under the circumstances, would consider important in deciding whether to purchase it. Defendant's own conduct confirms materiality: Defendant placed the representation on the front of every package of the Sweet & Sour Gummy Works and Dark Chocolate Chips and charged a premium for the Products bearing it.

67. Had Plaintiffs known that the Products contained sugar, they would not have purchased the Products. The Products were worth less than they would have been had they actually conformed to Defendant's representation that the products did not contain sugar.

68. Plaintiffs paid a price that incorporated the value of the Defendant's Zero Sugar Representations, but received Products that did not conform to those representations.

69. Plaintiffs therefore suffered economic injury at the point of purchase because they did not receive the benefit of the bargain for which they paid. Instead, Plaintiffs received Products that contained allulose, a sugar, despite Defendant's representation that the Products did not contain sugar.

70. Plaintiffs' injuries were caused by Defendant's misrepresentations. The challenged representations concern an important characteristic of the Products that Defendant affirmatively placed before consumers as a reason to purchase them.

71. The same deception affected other consumers who purchased the Products after encountering the Zero Sugar Representations. Those consumers were exposed to the same materially misleading representations, purchased Products containing a substantial amount of sugar, and received Products that did not conform to Defendant's representations.

72. As a direct and proximate result of Defendant's deceptive, misleading, unfair, and unlawful conduct described above, Plaintiffs and members of the proposed Classes were injured in fact and suffered ascertainable economic losses when they paid a premium for products bearing Defendant's false or misleading Zero Sugar Representations. The foregoing allegations establish Plaintiffs' and the proposed Class members' claims arising from Defendant's common course of conduct, which forms the basis for the class allegations set forth below.

## CLASS ACTION ALLEGATIONS

73. Plaintiffs bring this action on behalf of themselves, and all others similarly situated pursuant to Federal Rules of Civil Procedure 23. The proposed classes are defined below (collectively, the "Classes"):

> **Illinois Class**: All persons who, during the maximum period of time permitted by law, purchased the Products in Illinois for personal, family, or household use, and not for resale.
>
> **Nationwide Class**: All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal, family, or household use, and not for resale.

74. Excluded from the Classes are: (i) Defendant, their assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils, and/or subdivisions; (iv) any judicial officer presiding over this matter and persons within the third degree of consanguinity to such judicial officer; and (v) Plaintiffs' counsel and Defendant's counsel.

75. Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

76. **Numerosity:** Members of the Classes are so numerous that joinder of all members is impracticable. Upon information and belief, the Classes consist of thousands of purchasers. Accordingly, it would be impracticable to join all members of the Classes before the Court

77. **Predominance of Common Questions of Law and Fact**: There are numerous questions of law or fact common to all members of the putative Classes. Included within the common questions of law or fact are:

a. Whether the Products contain allulose and, if so, the amount of allulose contained in the Products;

b. Whether allulose is a sugar under the applicable laws, regulations, and standards governing the Zero Sugar Representations;

c. Whether Defendant represented that the Products were sugar free or made substantially similar nutrient-content claims;

d. Whether these representations were false, deceptive, misleading, or otherwise unlawful under the laws asserted herein;

e. Whether Defendant's labeling, packaging, advertising, marketing, and sale of the Products constituted consumer-oriented conduct and/or advertising directed to consumers;

f. Whether Defendant knew that the Products contained allulose and that the Products did not conform to the Zero Sugar Representations;

g. Whether the Zero Sugar Representations were material and likely to mislead a reasonable consumer acting reasonably under the circumstances;

h. Whether Defendant's Products are mislabeled under federal and state laws;

i. Whether Defendant's conduct caused economic injury to purchasers of the Products and the appropriate method for measuring such injury; and

j. Whether Plaintiffs and members of the Classes are entitled to actual damages or statutory damages and, if so, in what amount.

78. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Classes they seek to represent. Plaintiffs, like the members of the Classes, purchased Defendant's Products labeled with Defendant's deceptive Zero Sugar Representations. Plaintiffs purchased the Products during the applicable class period and were exposed to the same challenged Zero Sugar Representations. Plaintiffs suffered the same type of economic loss as the other members of the classes. Plaintiffs' and the Classes members' claims are based on the same legal theories and arise from the same course of conduct by Defendant.

79. **Adequacy**: Plaintiffs are an adequate representative because they have no interests adverse to those of the Classes, are committed to the vigorous prosecution of this action, and have retained skilled and experienced counsel. Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Fed. R. Civ. P. 23(a)(4).

80. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action. Common questions of law and fact predominate over any questions affecting only individual members of the Classes, and a class action is superior because the common issues can be resolved through common evidence and a single adjudication. Individual joinder of all members of the Classes is impracticable, and no other available method of adjudication would provide a more efficient or consistent means of resolving the claims asserted herein. The prerequisites to maintaining this action pursuant to Fed. R. Civ. P. 23(b)(3) are satisfied for at least the following reasons:

a. The central issues in this action, including whether the Products contain allulose, whether allulose constitutes sugar under the applicable laws and regulations, what Defendant represented concerning the Products' sugar content, whether those representations were false or misleading, whether Defendant knew the Products did not conform to those representations, and whether Defendant's conduct violated the applicable consumer-protection statutes, are common to the Class and predominate over any individual questions;

b. The Zero Sugar Representations were disseminated to consumers through common labeling, packaging, advertising, and marketing materials, such that the principal evidence concerning Defendant's conduct, the content of the representations, and their alleged falsity or misleading nature will be common to the Classes;

c. To the extent individual issues exist concerning the circumstances of particular purchases, such issues do not predominate over the common questions because liability will principally turn on Defendant's uniform conduct, the Products' characteristics, the Defendant's representations, and the applicable law;

d. The economic injury alleged by Plaintiffs and the Classes arises from the same alleged misconduct and can be established through common evidence and a common methodology. Individual differences, if any, in the amount paid, purchase date, quantity purchased, or resulting monetary recovery do not defeat predominance where the existence and methodology of the alleged injury can be established through common proof;

e. Given the relatively modest value of individual members of the Classes claims compared with the cost and burden of individual litigation, many members of the Classes would have little incentive or ability to pursue their claims individually. A class action therefore provides an effective mechanism for members of the Classes to obtain relief for alleged injuries that might otherwise go unremedied;

f. Members of the Classes have no substantial interest in individually controlling the prosecution of separate actions because the claims arise from Defendant's common course of conduct and present substantially overlapping factual and legal issues;

g. Concentrating the claims in a single proceeding is desirable because the alleged misconduct involves common Products, common representations, common labeling and marketing practices, and common questions concerning Defendant's conduct. A single proceeding will promote consistent adjudication of those issues and avoid unnecessary duplication of discovery, motion practice, expert testimony, and trial proceedings;

h. Individual litigation would create a substantial risk of inconsistent or varying adjudications concerning the same Products, Representations, and underlying conduct. Class-wide adjudication will promote consistency and judicial economy;

i. There are no pending individual actions known to Plaintiffs that would make separate adjudication a preferable method of resolving the controversy, and concentrating the claims in this forum is desirable and efficient; and

j. This action is manageable as a class action because the central liability issues are capable of resolution through common evidence and because any individualized

issues concerning damages or other forms of relief can be addressed through appropriate class-wide methodologies, claim procedures, or other case-management mechanisms ordered by the Court.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT 815 § 505/1 ET SEQ. ("ICFA")
### (on Behalf of Plaintiffs and the Illinois Class)

81. Plaintiffs reallege and reincorporate every factual allegation set forth in the preceding paragraphs as though fully set forth herein.

82. Plaintiffs bring this claim on behalf of themselves and the Illinois Class against Defendant.

83. Plaintiffs and other Illinois Class members are person within the context of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1(c).

84. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

85. Plaintiffs and the proposed Illinois Class are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

86. In its sale of the Products throughout the State of Illinois, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of the ICFA, 815 § 505/2.

87. The ICFA, 815 ILCS 505/2, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

88. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising,

misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2.

89. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the Products' front labels that the Products were sugar-free. Those representations are false or misleading because Defendant add allulose—a sugar—to each Product during processing. The Products do not conform to Defendant's Zero Sugar Representations.

90. The foregoing deceptive acts and practices were directed at consumers.

91. The foregoing deceptive acts and practices are misleading in a material way because they misrepresent the nature, composition, sugar content, quality, and value of the Products.

92. As a result of Defendant's deceptive practices, the Illinois Class members suffered an economic injury because they would not have purchased the Products, or would have paid less for them, had they known that Defendant add a sugar to the Products and did not conform to the Sugar-Free Representations.

93. On behalf of themselves, and the Illinois Class members, Plaintiffs seek to recover actual economic damages, and reasonable attorneys' fees and costs, as provided under ILCS 815 505/10a. Plaintiffs and the Illinois Class are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

**COUNT II**
**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**CAL. CIV. CODE § 1750 ET SEQ.**
**(On Behalf of Plaintiffs and the Nationwide Class)**

94. Plaintiffs reallege and reincorporate every factual allegation set forth in the preceding paragraphs as though fully set forth herein.

95. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against Defendant pursuant to the CLRA, Cal. Civ. Code § 1750, et. seq.

96. Plaintiffs and each member of the Nationwide Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Defendant's sale of products were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiffs and members of the Nationwide Class are "goods" or "services" within the meaning of Cal. Civ. Code § 1761(a)-(b).

97. For the reasons described above, Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiffs and the Nationwide Class which were intended to result in, and did result in, the sale of products sold at various retail locations across the country, and their website, www.traderjoes.com:

a. advertising goods or services with intent not to sell them as advertised; § 1770(a)(9); and

b. making false or misleading statements of fact concerning reasons for, existence of, or amounts of sugar; § 1770(a)(13).

98. Defendant's Zero Sugar Representations that are the basis of this claim emanated from its headquarters in California where it sells, distributes and advertises the products, and, thus, there is a nexus between its violations of the CLRA and California.

99. Plaintiffs and the Nationwide Class are consumers who have suffered economic injury and damages, including benefit-of-the-bargain damages, and/or out-of-pocket loss damages, as a direct result of Defendant's use and employment of the false and misleading Zero Sugar Representations herein. Defendant alleged that their Products were sugar free on the packaging, but the products that Plaintiffs and Nationwide Class Members purchased were not sugar free because they contained allulose. Plaintiffs and the Nationwide Class therefore did not receive the benefit(s) of their bargain(s). Additionally, Defendant's false reference sugar scheme artificially increased consumer demand for its products, thereby causing Plaintiffs and the Nationwide Class to purchase a product they otherwise would not have absent Defendant's Zero Sugar Representations.

100. Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining such methods, acts, or practices as well as any other relief the Court deems proper. Plaintiffs additionally seek costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1780(e). We reserve the right to amend the complaint for additional relief.

101. Plaintiffs, through counsel, will send a CLRA demand letter by certified mail to Defendant that provides notice of Defendant's violation of the CLRA as alleged herein, and demand that Defendant notify all members of the Nationwide Class and correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. If Defendant does not respond to Plaintiffs' letter and agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782, Plaintiffs will amend this complaint to seek actual, punitive, and/or statutory damages, as appropriate against Defendant.

## COUNT III
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") CAL. BUS. & PROF. CODE § 17200 ET SEQ.
## (On Behalf of Plaintiffs and the Nationwide Class)

102. Plaintiffs reallege and reincorporate every factual allegation set forth in the preceding paragraphs as though fully set forth herein.

103. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against Defendant for violations of the UCL, Cal. Bus. & Prof. Code § 17200 et. seq.

104. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

105. The UCL imposes strict liability. Plaintiffs and members of the proposed Nationwide Class need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

**"Unfair" Prong**

106. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

107. Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in misleading and deceptive advertising, making Zero Sugar Representations, leading reasonable consumers to believe the products did not contain sugar. Defendant's acts and practices offended an established public policy of transparency in labeling, including regulations enacted by the FTC, and constituted immoral, unethical, and unscrupulous activities that are substantially injurious to consumers.

108. The harm emanating from this practice to Plaintiffs and members of the proposed Nationwide Class outweighs any utility it provides because Defendant's practice of advertising false sugar content provides no utility. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

**"Fraudulent" Prong**

109. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

110. Defendant's acts and practices alleged above constitute fraudulent business acts or practices as Defendant has deceived Plaintiffs and members of the Nationwide Class and are highly likely to deceive members of the consuming public. Plaintiffs and members of the Nationwide Class relied on Defendant's fraudulent and deceptive Zero Sugar Representations regarding the Products. These misrepresentations played a substantial role in Plaintiffs' and members of the proposed Nationwide Class's decisions to purchase products that were allegedly zero sugar, and Plaintiffs would not have purchased products without Defendant's misrepresentations.

**"Unlawful" Prong**

111. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

112. Defendant's acts and practices alleged above constitute unlawful business acts or practices, violating both the California Civil Code §§ 1750 *et. seq.* (the "CLRA") and California Business and Professional Code §§ 17500 *et. seq.* (the "FAL"), as set forth in this complaint.

113. Defendant violates the FAL because it advertises items, including the items that Plaintiffs purchased and are described herein, with a Zero Sugar Representation that misleads consumers, leading them to purchase products with sugar in it, and is therefore an "unlawful" act in violation of the UCL.

114. Further, as detailed in Count IV below, the CLRA, Cal. Civ. Code § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised." Defendant intended, when they manufactured, produced, labeled, and marketed the item, to give consumers a product with sugar in it. They made Zero Sugar Representations that an average consumer would reasonably believe.

115. As detailed herein, and for the same reason that Defendant's acts and practices violate the FAL, they also violate the CLRA, thus establishing another "unlawful" act in violation of the UCL.

116. Defendant's practices, as set forth above, misled Plaintiffs, the Nationwide Class, and the public in the past and will continue to mislead them in the future. Consequently, Defendant's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

117. Defendant's violations of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat to Plaintiffs, members of the Nationwide Class, and the public. If Defendant's Zero Sugar Representations are permitted to continue, they will continue to deceive consumers into purchasing their Products. These Zero Sugar Representations lead to artificial and increased demand, which, in turn, leads to financial harm for consumers like Plaintiffs and the members of the Nationwide Class, as described herein. Because of the surreptitious nature of Defendant's deception, these injuries cannot be

reasonably avoided and will continue to be suffered by the consuming public absent a mandated change in Defendant's practice.

118. Defendant's Zero Sugar Representations that are the basis of this claim emanated from its headquarters in California, where it sells, distributes, and advertises the products, and, thus, there is a nexus between its violations of the UCL and California.

119. Plaintiffs and members of the Nationwide Class seek preliminary and permanent injunctive relief, enjoining Defendant from continuing to engage in this unfair competition alleged above. To the extent any of these remedies are equitable, Plaintiffs seeks them in the alternative to any adequate remedy at law available to them.

**COUNT IV**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW (FAL)**
**CAL. BUS. & PROF. CODE § 17500 ET SEQ.**
**(On Behalf of Plaintiffs and the Nationwide Class)**

120. Plaintiffs reallege and reincorporate every factual allegation set forth in the preceding paragraphs as though fully set forth herein.

121. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against Defendant for violations of California's FAL, Cal. Bus. & Prof. Code § 17500 et seq.

122. Cal. Bus. & Prof. Code § 17500 provides:

> It is unlawful for any ... corporation ... with intent directly or indirectly to dispose of ... personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that ... personal property or those services ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading….

123. Defendant's routine practice of advertising the Products as zero sugar, which they are not and never have been, constitutes an unfair, untrue, and misleading practice in violation of the FAL. This deceptive marketing practice gave Plaintiffs and Nationwide Class members the false impression that the products were zero sugar; therefore, leading to the false impression that the products sold by Defendant are worth more than they are.

124. As a direct and proximate result of Defendant's misleading and false advertisements, as well as Defendant's deceptive and unfair acts and practices made during the course of Defendant's business, Plaintiffs and members of the Nationwide Class did not receive the benefit of their bargain and suffered economic injury. As such, Plaintiffs request that this Court order Defendant to disgorge the benefit it received through its misleading advertisements and enjoin them from continuing their unfair practices in violation of the FAL. Otherwise, Plaintiffs, Nationwide Class members, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

125. Defendant's Zero Sugar Representations that are the basis of this claim emanated from its headquarters in California where it sells, distributes, and advertises the products, and, thus, there is a nexus between its violations of the FAL and California.

126. Plaintiffs and the Nationwide Class seek restitution, injunctive relief, and other and further relief as the Court may deem just and proper. To the extent any of these remedies are equitable, Plaintiffs seek them in the alternative to any adequate remedy at law available to them.

## COUNT V
## UNJUST ENRICHMENT
## (On Behalf of Plaintiffs and the Nationwide Class)

127. Plaintiffs reallege and reincorporate every factual allegation set forth in the preceding paragraphs as though fully set forth herein.

128. Plaintiffs bring this claim individually and on behalf of the Nationwide Class against Defendant.

129. Plaintiffs and the Nationwide Class members conferred a benefit on Defendant in the form of revenues Defendant derived from their purchases of the Products.

130. Defendant knew of the benefit Plaintiffs and the Nationwide Class conferred on it.

131. Defendant has been unjustly enriched by retaining revenues from Plaintiffs' and Nationwide Class's purchases. That retention is unjust because Defendant misrepresented that the Products were zero sugar causing purchases that otherwise would not have occurred or would have occurred only at lower prices.

132. Defendant accepted and retained the benefit of revenues derived from sales of the Products to Plaintiffs and the Nationwide Class.

133. Defendant has thereby profited under circumstances that make it unjust for Defendant to retain the benefit.

134. Plaintiffs and the Nationwide Class are therefore entitled to restitution in the form of revenues derived from Defendant's sale of the Products.

135. As a direct and proximate result of Defendant's actions, Plaintiffs and the Nationwide Class have suffered damages in an amount to be proven at trial.

136. Plaintiffs and the Nationwide Class have suffered injury in fact and lost money as a result of Defendant's conduct.

137. Plaintiffs and the Nationwide Class lack an adequate remedy at law with respect to this claim and seek equitable relief as allowed by law.

138. Legal remedies available to Plaintiffs and the Nationwide Class are inadequate because they are not as prompt, certain, or efficient as equitable relief. Damages are not as

certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs have failed to adduce sufficient evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not as certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

139. Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their respective purchases of the Products are determined to be less than the price premiums they paid. Without compensation for the full price premiums, Plaintiffs and the Nationwide Class would be left without the parity in purchasing power to which they are entitled.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and each member of the proposed Classes, respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

a. That the Court declares, adjudges, and decrees that this action is a proper class action and certify the proposed Classes under Federal Rule of Civil Procedure Rule 23, including the appointment of Plaintiffs' counsel as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, consistent with applicable law and only under causes of action that permit such relief;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling, marketing, and selling the Products with the Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct; and

h. For an order awarding Plaintiffs' and the Classes' reasonable attorneys' fees, expenses, and costs of suit.

## JURY DEMAND

Plaintiffs, on behalf of themselves the proposed Classes, hereby demand a trial by jury for all issues triable by jury.

Dated: November 10, 2026

Respectfully submitted.

*/s/ Kelly K. Iverson*
Kelly K. Iverson (Bar No. 307175)
Nicholas A. Colella (Bar No. 1002941)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Kelly@lcllp.com
NickC@lcllp.com

*Attorneys for Plaintiffs and the Proposed Classes*